UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARLENE BRODY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FIELDWORK CHICAGO – )<br>SCHAUMBURG, INC., )<br>an Illinois corporation, )<br>)<br>Defendant. ) | No: 04 C 5406<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Arlene Brody, brought a three-count complaint against her former employer, Fieldwork Chicago-Schaumburg, Inc. ("FW-Schaumburg"), alleging violations of the Age Discrimination Employment Act (ADEA) and the Americans with Disabilities Act (ADA). Currently before the Court is the Defendant's Motion for Summary Judgment.

### BACKGROUND

The Plaintiff was born on March 13, 1937, and is a resident of the State of Illinois. (Def.'s 56.1(a)(3) Statement ¶ 1). FW-Schaumburg is a market research company located in Schaumburg, Illinois, which provides participants, meeting space, and logistical support for clients to conduct focus group studies. (Id., ¶ 2). FW-Schaumburg is part of a nationwide network of independently owned and operated Fieldwork centers that allow clients to manage all of the field study strategies, recruiting, and arrangements through one central source. (Id., ¶ 3).

1

In or around March 1994, Susan Brody – the Plaintiff's then-daughter-in-law, and the President and owner of Fieldwork O'Hare, Inc. ("FW-O'Hare") – hired the Plaintiff as an administrative assistant. (Def.'s 56.1(a)(3) Statement ¶ 5). A few months later, Susan Brody became the President and owner of a second Fieldwork center, FW-Schaumburg. (Id., ¶ 6). Thereafter, Susan Brody jointly owned and operated FW-O'Hare and FW-Schaumburg, and the Plaintiff, working out of the FW-Schaumburg office, performed administrative tasks for both FW-O'Hare and FW-Schaumburg. (Id., ¶ 7). Among other things, Plaintiff's administrative tasks included data entry, payroll, billing, ordering office supplies, and ordering money from the bank to replenish the cash used to pay focus group participants. (Id., ¶ 8).

Following Susan Brody's resignation, FW-O'Hare and FW-Schaumburg's operations were separated. (Def.'s 56.1(a)(3) Statement ¶ 9). Prior to the separation of the operations, most of the work that the Plaintiff did was for FW-O'Hare. (Pl.'s 56.1(a)(3) Statement ¶ 2). In or about December 2001, Karyn Picchiotti (Susan Brody's cousin) became the President and owner of FW-Schaumburg; and Pam Kleinman (Susan Brody's sister) became the President and owner of FW-O'Hare. (Def.'s 56.1(a)(3) Statement ¶ 10). Following the split, the Plaintiff reported to Karyn Picchiotti and continued to perform administrative tasks but only for FW-Schaumburg. (Id., ¶ 11). During the Plaintiff's tenure, she was supervised by three people: Brody, Paul Scaletta, and Picchiotti. (Pl.'s 56.1(a)(3) Statement ¶ 3).

Plaintiff reported that Picchiotti was "not happy with some of [her] work." (Def.'s 56.1(a)(3) Statement ¶ 12). On April 22, 2002, Picchiotti issued Plaintiff a write-up, which noted that the Plaintiff: (1) failed to order money for April 16, (2) submitted leftover incentive money

2

on April 17 that was not accounted for on a billing reconciliation sheet, (3) failed to indicate a 10 percent discount on a April 22 billing sheet, (4) did not list incentive charges on a April 22 billing cover sheet, and (5) failed to verify that the money ordered had been received on April 22. (Id. ¶ 15). The April 22 write-up further reminded the Plaintiff that: (1) "all payroll worksheets should be checked thoroughly before submitted for call in," (2) "all incentive money must be reconciled at the completion of a study", (3) "all leftover money [i]s to be accompanied by a completed and accurate reconciliation sheet", (4) "all money orders must be followed up with a phone call to ensure that the correct person received the order, (5) a 10 percent discount on billing cover sheets must be indicated where appropriate, and (6) "when 'absent from the office,'" the Plaintiff must "contact someone to give them instructions" on any tasks that need to be completed in her absence. (Id. ¶ 17). Plaintiff admitted there was nothing inaccurate in the April 22 write-up. (Id. ¶ 18).

After receiving the April 22 write-up, Plaintiff continued to make mistakes on billing sheets – for example, Plaintiff admittedly wrote the wrong number of incentive payments on a May invoice, resulting in a client being undercharged $150.00. (Def.'s 56.1(a)(3) Statement ¶ 19). As a result of these errors and concern that there might be more, Picchiotti spent extra time reviewing and revising the billing reports prepared by Plaintiff. (Id., ¶ 20). Judy Thomas, a project manager, complained to Picchiotti about the Plaintiff. (Id., ¶ 22).

Picchiotti issued Plaintiff a second write-up on September 23, 2002. (Def.'s 56.1(a)(3) Statement ¶ 24). Among other things, the September 23 write-up noted that Plaintiff had again forgotten to indicate a 10 percent discount on a recent billing cover sheet and had recently left early twice without notifying anyone. (Id., ¶ 25). The write-up outlined nine areas for the

Plaintiff to "work on," including her "general attitude," "phone room etiquette," and "personal phone calls." (Id., ¶ 26). The Plaintiff met with Picchiotti to discuss the write-up, which Plaintiff signed acknowledging that she had "reviewed the responsibilities and issues [set forth] and understood them completely." (Id., ¶ 28). The Plaintiff does not know of any instances in which individuals employed by Fieldwork made errors in their work but were not disciplined or counseled. (Id., ¶ 29).

Picchiotti found that a full-time administrative assistant was not needed. (Def.'s 56.1(a)(3) Statement ¶ 32). None of the other Fieldwork centers' presidents had an administrative assistant like the Plaintiff. (Id., ¶ 33). In Fall 2002, Picchiotti moved Plaintiff out of the office in which they had previously worked together. (Pl.'s 56.1(a)(3) Statement ¶ 68-69). Although Plaintiff needed a computer and a printer to do her work, Picchiotti refused to move those items to Plaintiff's new location, making it difficult for her to work. (Id. ¶¶ 69, 71). Around that time, Picchiotti hired new employees who were substantially younger than Plaintiff and gave them various job duties that Plaintiff had previously performed. (Id. ¶¶ 65-68, 76-85). On December 12, 2002, Picchiotti met with the Plaintiff and informed her that her employment had been terminated. (Def.'s 56.1(a)(3) Statement ¶ 35).

Plaintiff alleges that Picchiotti discriminated against her on the basis of her age by terminating her employment and "hiring people younger to take her place" – in particular, by hiring project manager Dan Krauss, whose birth date is June 23, 1979; and Jenny Mrozek, whose birth date is June 28, 1973. (Def.'s 56.1(a)(3) Statement ¶ 36). Both Krauss and Mrozek are related to Carrie Mrozek Krauss, a friend of Picchiotti. (Id., at ¶ 38). The Plaintiff admitted,

however, that Picchiotti may have let her go simply because Picchiotti just "didn't like working with [the Plaintiff]." (Id., ¶ 37).

Plaintiff admits that she was not terminated because of her alleged disability. (Def.'s 56.1(a)(3) Statement ¶ 40).

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

## ANALYSIS

*Discrimination Based Upon the ADEA*

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff in an age discrimination case may prove discrimination by

presenting either direct or circumstantial evidence. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir.1998). Direct evidence usually requires an admission by the decision maker that his actions were based on age. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Here, because the Plaintiff offers no direct evidence of age discrimination, her ADEA claims are governed by the indirect, burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 492, 802 (1973) (*McDonnell Douglas*). *Reeves v. Sanderson Plumbing Products, Inc.*, 530 US 133, 142 (2000) (noting that *McDonnell Douglas* framework applies in ADEA cases when parties do not dispute it).

The plaintiff must first establish a *prima facie* case of discrimination; then the defendant may state one or more legitimate, nondiscriminatory reasons for its actions, after which the plaintiff has an opportunity to show that the defendant's reasons are pretextual. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (*Burdine*). To establish a *prima facie* case, a plaintiff must demonstrate that she: (1) was in the protected age group; (2) was performing her job satisfactorily; (3) suffered an adverse employment action; and (4) was replaced by a similarly situated individual outside the protected class. *McDonnell Douglas*, 411 U.S. at 802.

If a plaintiff meets this showing, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *Stockett v. Munchie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000). At this stage, an employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257.

Once the defendant meets this burden of production, the burden shifts back to the plaintiff to show that an employer's proffered reason is pretextual. To show a pretext, a plaintiff must do more than demonstrate that the employer made a mistake or that the employer's reason was not good enough to support its decision. *Reeves*, 530 U.S. at 147. Plaintiffs must provide "evidence tending to prove that the employer's reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge," *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 303 (7th Cir.1996) (citation omitted), and that plaintiff would not have been let go but for her age. *Burdine*, 450 U.S. at 256.

In this case, the Plaintiff fails to establish a *prima facie* case of discrimination because she cannot establish that she was meeting FW-Schaumburg's legitimate job expectations. "[S]o long as the employer's employment expectations are 'in good faith[,] without fraud or deceit,' . . . [a court] only determine[s] if the employee met them." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000) (internal citation omitted). The Plaintiff has not presented any evidence that FW-Schaumburg's expectations that Plaintiff order money in a timely fashion, verify that it had been ordered, submit leftover incentive money not accounted for on a billing reconciliation sheet, appropriately indicate discounts, list incentive charges, and notify her employer if she was absent were unreasonable and not in good faith. Plaintiff's response is that her job performance had never been criticized until she began reporting to Picchiotti. Plaintiff also contends that some of Picchiotti's criticism of Plaintiff's performance is vague and unfounded. However, Plaintiff has failed to show any adverse employment action by FW-Schaumburg based on Plaintiff's age. For these reasons, Plaintiff failed to make out a *prima facie* case.

Assuming arguendo that the Plaintiff met her burden of establishing a prima facie case, the Defendant has articulated a non-discriminatory reason for the employment action. The Defendant alleges that the Plaintiff was terminated because she failed to meet the employer's job expectations. It, therefore, would meet its burden of production; and the burden would shift back to the Plaintiff to show that the reason was pretextual. Here, the Plaintiff has not shown pretext because she admitted that her employer was unhappy with her work and stated that it is possible that they may have let her go simply because her boss just "didn't like working with her." (Def.'s 56.1(a)(3) Statement ¶ 37). As a result, even if the Plaintiff were able to establish a *prima facie* case – which she is not – she would still not be able to sustain her ultimate burden.

For the foregoing reasons, summary judgment with respect to the ADEA claims is granted in favor of the Defendant.

*Discrimination Based Upon the ADA*

In her complaint, the Plaintiff alleged violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. As the Plaintiff admits that she was not terminated because of her record of disability or because she was regarded as a person with a disability, Defendant's Motion for Summary Judgment with respect to the ADA claims is granted. (Def.'s 56.1(a)(3) Statement ¶ 40).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

Dated: January 19, 2006

JOHN W. DARRAH

United States District Judge